UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTY SPADARO,

                              Plaintiff,

      -against-                           1:08-CV-0159 (LEK/DRH)

JACK McKEON, individually; CAROLE
LaVIGNA, individually; ALEXANDER B
GRANNIS, individually; NEW YORK
STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and the STATE OF NEW
YORK,

                              Defendants.
_____

### MEMORANDUM-DECISION AND ORDER[1]

On February 11, 2008, after being discharged from her position with the New York State Department of Environmental Conservation ("DEC") while on maternity leave, Plaintiff Christy Spadaro ("Plaintiff") filed this action against Defendants Jack McKeon ("McKeon"), Carole LaVigna ("LaVigna"), Alexander Grannis, DEC, and the State of New York (collectively, "Defendants"). Compl. (Dkt. No. 1). She alleges that her discharge was motivated by unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000 *et seq.*; 42 U.S.C. § 1983 ("§ 1983") and; 42 U.S.C. § 1981 ("§ 1981"). Plaintiff sues McKeon, LaVigna, and Grannis for these alleged violations in their individual capacities only. Presently before the Court is Defendants' Motion for summary judgment on all of Plaintiff's claims. Dkt. No. 25.

---

[1]For printed publication in the Federal Reporter

1

**I.    BACKGROUND**

Plaintiff is a white female previously employed by the State of New York as an Administrative Action Administrator 2 ("AAA2) in the DEC. She was terminated from this position on or about May 23, 2007. Dkt. No. 25-2 Exh. O. She was informed of this termination by letter on May 7, 2007 while she was on maternity leave. Compl. ¶¶ 3, 12.

Plaintiff worked in the DEC, beginning in 2001, as the Special Assistant for Human Resources. Spadaro Dep. (Dkt. No. 26-4) at 13-14. In 2006, Plaintiff created the AAA2 position by reclassifying a then vacant position, which she could fill, and which would enable her to retain state service after the Spitzer administration came into office.[2] Id. at 23-30. In creating this position, Plaintiff worked with Defendant LaVigna, Director of Personnel at the DEC, to establish the duties associated with the position and to gain administrative approval. Id. at 26. As created, the position afforded its holder tenure after one year; thus, the occupant of the AAA2 position would not be subject to at-will termination after one year from the date of hire. Id. at 28-29.

After establishing the duties associated with the proposed position with Plaintiff, LaVigna submitted the proposal for approval by the Civil Service Commission, which was granted in September 2006. Id. at 33-34. Plaintiff and LaVigna then began meeting to try to qualify Plaintiff for the job by, for example, tailoring Plaintiff's resume to fit the position's requirements. Id. LaVigna advised Plaintiff that her resume, as originally produced would not qualify, telling Plaintiff that she should document any supervisory experience and affirmative action experience Plaintiff possessed. Id.  Plaintiff submitted a revised resume evidencing greater supervisory experience. Id.

---

[2]Plaintiff was originally hired while Governor George Pataki, a Republican, was in office. Plaintiff, also a Republican, feared that she would be terminated once Elliot Spitzer took office in 2007. Spadaro Dep. (Dkt. No. 26-4) at 23-24, 30.

at 36-37.  Plaintiff cannot recall what affirmative action experience she added on the resume except for one notation that as Special Assistant for Human Resources she "dealt with underrepresented class people," that she would "look at the organization equity-wise, and bring people up to where they should be," citing one example where she helped elevate a white female to a higher position. Id. at 38-39.  Plaintiff also noted that she had affirmative action work while working as Assistant to the Appointment Secretary in the Governor's office, where working with various committees, she helped "try to bring in certain people for positions," for example, where "an agency that needed a woman . . . or needed a minority for the position . . . that's what [she] would recruit." Id. at 40.  The facts are disputed as to whether, as revised, the resume satisfied LaVigna's concern about Plaintiff's qualifications.  Compare id. at 45 with LaVigna Decl. (Dkt. No. 25-2) ¶ 42.

During this process, LaVigna received a memo and Job Applicant Log[3] from Juan Abadia, an African American male who headed the DEC's Affirmative Action Office and would supervise the holder of the AAA2 position.  LaVigna Decl.¶¶ 33-35.  She passed these on to Jack McKeon, Assistant Commissioner for Administration of the DEC.  The memo and log disapproved of Plaintiff's proposed hiring for the new position.  This disapproval essentially blocked Plaintiff's application.  Id. at 37.

Defendants admit that filing a Job Applicant Log for a position such as the AAA2 was unusual.  McKeon Decl. (Dkt. No. 25-3) ¶¶ 17-18.  Plaintiff then told McKeon that she was taking appropriate action against Abadia, and she filed a complaint against him alleging discrimination. See Dkt. No. 25-3 Exh. B.  McKeon, nevertheless, proceeded with the hiring process of Plaintiff.

---

[3]A "Job Applicant Log" is the mechanism by which the DEC ensures that protected class candidates receive due consideration during the hiring process.  McKeon Decl. (Dkt. No. 25-3) ¶ 15.

3

He spoke first with LaVigna, asking her to sign off on the appointment. LaVigna refused, allegedly because she felt Plaintiff was unqualified. McKeon Decl. ¶ 22. McKeon did not agree with LaVigna's assessment and asked Lynette Stark, then Executive Deputy Commissioner at DEC, to sign off on the appointment, which she did. Id. ¶¶ 23-25.

On December 11, 2006 McKeon informed Plaintiff that she would be appointed to the position. Id. ¶ 26. Plaintiff alleges that this offer was conditioned upon her withdrawing her complaint against Abadia, which she did. Id. ¶ 27; Spadaro Dep. (Dkt. No. 26-5) at 71-73. Plaintiff was appointed and began working under the direction of Joseph Lattanzio, head of the DEC Labor Relations Office, rather than under Abadia. Plaintiff continued working until January 30, 2007 when she left on maternity leave. After Plaintiff's hiring, two employees, Kenneth Wilson and Alfonse Vicente, both African American males who had been working for some time under Abadia, allegedly filed discrimination claims against the DEC in response to Plaintiff's appointment.

Plaintiff's maternity leave began at roughly the same time as the Spitzer administration took office. According to McKeon, with the change in administration, the DEC began reviewing with administration members which positions within the department should remain and which individuals should be retained. McKeon Decl. ¶ 29. Allegedly, the decision to terminate Plaintiff was based on this assessment, and had nothing to do with discrimination. Id. ¶¶ 28-32. McKeon thus instructed LaVigna to draft a letter terminating her employment, which she did. LaVigna Decl. ¶ 62; Dkt. No. 25-2 Exh. O.

Plaintiff alleges that the true basis for the termination decision was discrimination based on race, gender, or pregnancy. Compl. ¶ 15. She bases this assertion on comments reported to her by Lattanzio, in which he recounted statements made by McKeon and Abadia suggesting such

4

discriminatory intent. She also notes that within a month or so of receiving the letter, she saw two positions advertised on the DEC website, one of which was allegedly her prior position. Spadaro Dep. (Dkt. No. 26-5) at 100. She asserts that these positions were created specifically for Wilson and Vicente, who Plaintiff claims are less qualified than she, to placate them and have them withdraw their complaints against the DEC. Id.; Compl. ¶ 9. Wilson did not take either position; Vicente was appointed to that which Plaintiff alleges was hers. Id. ¶¶ 13-14.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing the judgment.'" Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The

nonmoving party "may not rely merely on allegations or denials in its own pleadings" and bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### III.    DISCUSSION

Plaintiff's Complaint alleges three causes of action against Defendants, all of which spring from Defendants' allegedly discriminatory firing of Plaintiff; these causes of action allege violations of (1) 42 U.S.C. § 1983; 2) 42 U.S.C. § 1981; and (3) Title VII of the Civil Rights Act of 1964. For reasons discussed below, all three causes of action hinge on the validity of Plaintiff's Title VII claim. The Court will, therefore, address that claim first and then turn to the remaining claims.

#### A.    Plaintiff's Title VII Claim

Plaintiff claims that, as a result of her allegedly discriminatory firing, Defendants State of New York and the DEC violated her rights as guaranteed by Title VII. Compl. ¶ 20-21. To state a claim of disparate treatment under Title VII, Plaintiff must show either that she "suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or . . . demonstrat[e] that harassment on one or more of these bases amounted to a hostile work environment." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (citing Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir.2001)). Plaintiff asserts the former, specifically, that she suffered an adverse job action, namely being discharged, under circumstances giving rise to an inference of discrimination on the basis of race, sex, or pregnancy. See generally, Compl. Clearly, termination from employment is sufficiently adverse for the purpose of Title VII. Feingold, 366 F.3d at 152.

The remaining issue, as is often the case with such claims, is whether this adverse action was instigated under circumstances giving rise to an inference of unlawful discrimination. Importantly, when considering the circumstances underlying the adverse action, unlawful discrimination need not be found to be the only, or even the main reason for the adverse action; a violation occurs if such discrimination was in any way a motivating factor. See 42 U.S.C. § 2000e-2(m) ("an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."); see also Holcomb v. Iona College, 521 F.3d 130, 137-138 (2d Cir. 2008). Additionally, because direct evidence of discriminatory intent is rarely available, courts must be "particularly cautious" about granting summary judgment in cases turning on that issue. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); Gallo v. Prudential Residential Servs, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). In such cases, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gallo, 22 F.3d at 1224. Finally, the role of this Court in considering Defendants' Motion for summary judgment "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Id.

The Supreme Court's burden-shifting test, announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), provides the framework for evaluating disparate treatment claims brought under Title VII. See also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the

   legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  The defendant need not persuade the court that it was actually motivated by the proffered reasons, but it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.  To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.

Burdine, 450 U.S. at 248 (internal citations omitted).

  "The burden of establishing a prima facie case of disparate treatment is not onerous." Id. Plaintiff may meet her burden "by showing 1) that [s]he belonged to a protected class; 2) that [s]he was qualified for the position he held; 3) that [s]he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Feingold, 366 F.3d at 152.  Defendants apparently concede that Plaintiff, as a white female employee qualified for the position from which she was terminated; has established the first three prongs; but they dispute that she has met her burden with regard to the fourth.  Mem. of Law in Supp. of Defs.' Mot. for Summ. J. (Dkt. No. 25-7) ("Defs.' Mem.") at 11.  Defendants further argue that even if Plaintiff has made a *prima facie* case, they have adequately met their burden of production of a non-discriminatory motive for the action, namely that the AAA2 position was no longer needed in the Office of Labor Relations.  Id. at 13; McKeon Decl. (Dkt. No. 25-3) ¶¶ 31-32.  Defendants then claim that Plaintiff has failed to present evidence allowing a reasonable fact-finder to infer that her termination was motivated in any part by unlawful discriminatory motive.  Defs.' Mem. at 13-14.

      **1.**   *Race Discrimination as a Motive for Plaintiff's Termination*

  To meet her burden of raising an issue of material fact regarding the allegedly discriminatory circumstances surrounding her termination, Plaintiff first points out that Juan Abadia, an African

American male, initially attempted to block her appointment to the position through what both parties apparently agree was an unusual job log requirement. McKeon Decl. ¶¶ 16-18; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. (Dkt. No.26) ("Pl.'s Mem.") at 16. This presentation provides no support for Plaintiff's claim, however, as Mr. Abadia is not a party, and Mr. McKeon, who is, actually assisted Plaintiff in overcoming this obstacle and is the individual who eventually appointed her to the position. McKeon Decl. ¶¶ 18-26; Pl.s' Mem. at 2. On this point, the Court notes that under the widely accepted "same actor inference," the fact that McKeon is both the person responsible for hiring and firing Plaintiff, makes Plaintiff's discrimination claim unlikely. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("[S]ome factors strongly suggest that invidious discrimination was unlikely. For example, when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire"); Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000); Wallmar-Rodriguez v. Felix Roma Bakery, No. 05-CV-0111, 2007 WL 1388120, at *5 (N.D.N.Y. May 9, 2007); Cordell v. Verizon Wireless, 550 F. Supp. 2d 400, 404 (W.D.N.Y. 2008). This inference, which diminishes Plaintiff's claim that an invidious motivation underlay Defendants' decision to terminate her is particularly strong given the short period, five months only, between her hiring and firing. Grady, 130 F.3d at 560.

    Plaintiff further asserts that McKeon alleged disapproval of her filing a complaint against Abadia, and his alleged demand that she withdraw that complaint suggest discrimination. Again, the Court notes that McKeon is the individual who appointed Plaintiff to the position, and that this appointment occurred immediately after these actions Plaintiff now alleges to be indicative of discriminatory motivation. In such circumstances, Plaintiff's assertions do not give rise to an issue

of triable fact. See Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (same actor inference "remains a highly relevant factor in adjudicating a motion for summary judgment"); Cordell v. Verizon Wireless, 550 F. Supp. 2d at 404 (same in granting summary judgment in a Title VII claim).

Plaintiff also cites comments by Abadia and McKeon, recounted in Mr. Lattanzio's deposition are suggestive of improper motive. See, e.g., Joseph Lattanzio Dep. at 14, 18. These statements constitute inadmissible hearsay. FED. R. EVID. 801(c), 802. Therefore, they shall not be considered in determining whether Plaintiff has raised an issue of material fact for purposes of summary judgment. FED. R. CIV. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts *that would be admissible in evidence*, and show that the affiant is competent to testify on the matters stated.") (emphasis added); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) ("Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (citing Celotex, 477 U.S. at 322-23) (where movant points to a lack of evidence for an essential portion of the non-movant's claim, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.").

Plaintiff also claims that the alleged resistance LaVigna showed towards Plaintiff's hiring gives rise to an inference of discriminatory motivation. The Court notes, however, that Plaintiff has alleged no act, other than the ministerial act of drafting the termination letter at the instruction of McKeon, linking LaVigna to the decision to fire Plaintiff. Having failed to allege such facts linking

LaVigna and the alleged violation, Plaintiff similarly fails to raise an issue of triable fact in pointing to LaVigna's refusal to sign off on Plaintiff's appointment. Moreover, Plaintiff has provided no support that LaVigna's conduct was motivated by unlawful discrimination.

Finally, Plaintiff alleges that an inference of unlawful discrimination arises from the fact that shortly after her termination, two job postings, one for her position and one for another position of the same grade were posted on the DEC website. Spadaro Dep. (Dkt. No. 26-5) at 99-102. She alleges that these positions were created for Kenneth Wilson and Alfonso Vincente, who had filed discrimination suits against the DEC after Plaintiff's hiring and were the result of an agreement between Defendants, aided by DEC counsel, in order "to avoid a potentially volatile race discrimination investigation which might adversely affect them in their respective positions of employment." Id.; Compl. ¶ 10-12. Despite the strength with which she articulates these allegations in her Complaint, Plaintiff admits to having no evidence to support these claims other than the bare fact that the positions were advertised shortly after she was terminated. Spadaro Dep. (Dkt. No. 26-5) at 100-102. Under such circumstances, no triable issue of fact has been raised.

Having raised no triable issue of fact from which a reasonable jury could conclude that Plaintiff's termination was motivated in whole or in part by racial discriminatory, Plaintiff has failed to make a *prima facie* case under Title VII, and Defendants are entitled to summary judgment on this claim as it relates to a race-based violation.

### 2. *Gender or Pregnancy Discrimination as a Motive for Plaintiff's Termination*

Plaintiff's claim focuses on a violation based upon racial discrimination. She notes, however, in various submissions that, as a pregnant female, she could raise a claim based on gender or pregnancy discrimination. See, e.g., Compl. ¶ 15; Pl.'s Mem. at 10. Formulated as a gender or

11

pregnancy discrimination claim, the first three requirements of a *prima facie* showing are the same as when racial discrimination is alleged, and the fourth prong requires a showing that her position remained open and was filled, respectively, by a member of the opposite gender or a non-pregnant employee.  Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1239 (2d Cir. 1995); Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995).

As noted above, Defendants apparently concede that Plaintiff has sufficiently met the first three prongs of her *prima facie* case of pregnancy discrimination.  Viewing the facts presented in the light most favorable to Plaintiff, she has also met the fourth prong, namely that her position remained open, as suggested by her seeing the website posting of its availability shortly after her termination, and the filling of that position with a non-pregnant, male applicant, Mr. Vicente.

Having made a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee." Id.  Defendants attempt to meet this burden through an affidavit submitted by McKeon attesting to the non-discriminatory motivation for the firing and by offering an allegedly non-discriminatory, legitimate basis for the termination.[4]  McKeon Decl. ¶ 32.  The reason provided is that the AAA2 position was needed elsewhere, and not in Mr. Lattanzio's office.  Id. ¶ 31.  The Court finds this

---

[4]Defendants cite to the "same actor inference." in support of their burden of production with regard to Plaintiff's race-based Title VII claim.  Defs.' Mem. at 12.  Given the short time frames between Plaintiff's hiring on December 11, 2006, her giving birth on February 14, 2007, and her firing on May 23, 2007, this inference is also available to Defendants with regard to Plaintiff's pregnancy discrimination claim as well.  Wallmar-Rodriguez, 2007 WL 1388120, at *5 (citing Grady, 130 F.3d at 560; Pinkey v. EMI Music Pub., No. 02-CV-1994, 2006 WL 2456815, at *11 (S.D.N.Y. Aug. 22, 2006).).  As mentioned above, this inference is strongest when, as in the instant case, the period of time between the two decisions is short.  Grady, 130 F.3d at 560.  McKeon certainly was aware of Plaintiff's gender and, presumably, he would have been aware of Plaintiff's pregnancy when he hired her roughly 2 months prior to her delivery.  Thus, the same actor inference is applicable.

proffered reason to be a legitimate purpose.

The burden, thus, shifts back to the Plaintiff to show that a triable issue of fact exists as to whether the offered legitimate reason is mere pretext. Burdine, 450 U.S. 248, 253 (1981). Plaintiff provides only conclusory allegations to rebut the Defendants' proffered purpose.[5] Plaintiff alleges that her termination was made by agreement in order to placate other employees who had filed a discrimination suit against the DEC. Compl. ¶11. She admits, however, to having absolutely no factual support beyond the inadmissible hearsay testimony of Lattanzio and the fact that the positions were advertised as open. Spadaro Dep. (Dkt. No. 26-5) 99-111. The Court has already discussed why it will not consider inadmissible evidence. The mere fact that a position was open fails to raise an issue of triable fact as to the improper motivation for Plaintiff's firing. If anything, it undercuts Plaintiff's contention that the positions were opened for specific individuals as it presents an open call for applicants. Plaintiff admits to having no other factual support for her allegation. Spadaro Dep. (Dkt. No. 26-5) at 99-102. Similarly, though Plaintiff asserts that Vicente and Wilson were less qualified for the position than she, Compl. ¶ 9, she admits that she has no real knowledge to support this claim. Spadaro Dep. (Dkt. No. 26-5) at 108-111. With no issue of triable fact existing with regard to Defendants' proffered lawful basis for Plaintiff's termination, Defendants' Motion for summary judgment on Plaintiff's Title VII claim as it relates to gender and pregnancy discrimination is granted.

### B.     Plaintiff's Equal Protection Claim under § 1983

Where a plaintiff asserts a claim under 42 U.S.C. § 1983 which, as in the instant case,

---

[5] The Court notes that this same analysis would apply to Plaintiff's race-based iteration of her Title VII claim if she had been able to make a *prima facie* case on that claim.

mirrors a claim brought under Title VII, the elements of the claims are the same, and the same burden-shifting framework applies to each. Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993)). Based on the foregoing discussion, it is therefore clear that Defendants are entitled to summary judgment with regard to Plaintiff's claim under § 1983.

    C.    **Plaintiff's § 1981Claim**

As with claims brought under § 1983, because Plaintiff's claim under 42 U.S.C. § 1981 mirrors her Title VII claim, the elements of the claims are the same, and the same burden-shifting framework applies to each. St. Mary's Honor Ctr., 509 U.S. at 506 n.1 (citing Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989). Thus, Plaintiff has failed to raise an issue of triable fact with regard to her § 1981 claim, and Defendants are entitled to summary judgment.

**IV.    CONCLUSION**

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 25) is **GRANTED** in its entirety; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:    March 15, 2010
                 Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge